[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11588
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 10, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-61259-CV-KAM

GREAT LAKES REINSURANCE (UK) PLC,

Plaintiff-Appellant,

versus

TLU LIMITED,
GARY KIRKLAND,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 10, 2008)**

Before ANDERSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Great Lakes Reinsurance (UK) PLC appeals from the district court's order

granting the motion of TLU Limited and Gary Kirkland (collectively, the

"Insureds") to stay and administratively close this case, pending a state court action involving the same issues.[1] In this case, Great Lakes seeks to declare void an insurance policy it had issued to the Insureds. On appeal, Great Lakes argues that the district court abused its discretion in staying the federal court case by: (1) failing to apply, or properly apply, the test established by this Court to determine whether to stay a declaratory judgment action; and (2) otherwise committing a clear error of judgment in resolving the motion. After careful review, we affirm.

We review a federal district court's stay of a declaratory judgment action for abuse of discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995). Under this standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard. Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1332 (11th Cir. 2005). District courts have "substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." Wilton, 515 U.S. at 286. We, as the reviewing court, "must be mindful that the district courts are closer to the facts and the parties, and that not

---

[1] Because the district court's order would be resolving the same issues as the state court, the order staying the case effectively terminated the case, and is therefore final and appealable. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8-13 (1983).

everything that is important about a lawsuit comes through on the printed page." Ameritas, 411 F.3d at 1332 (quotation omitted).

Indeed, the Declaratory Judgment Act ("DJA") is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." Wilton, 515 U.S. at 287 (quotation omitted). It says:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]

28 U.S.C. § 2201(a) (emphasis added). As its use of the permissive "may" indicates, the DJA "only gives federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas, 411 F.3d at 1330; see also Wilton, 515 U.S. at 286 ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.") (emphasis added); Brillhart v. Excess Ins. Co. of Amer., 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . ., it was under no compulsion to exercise that jurisdiction.").

3

Relying on these principles, this Court has outlined nine factors that a district court should consider in determining whether to accept or decline jurisdiction under the DJA when a related state action is pending:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" -- that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas, 411 F.3d at 1330-31.  We also, after setting forth these factors, have upheld a district court's refusal to assert jurisdiction where the district court had considered only two of the factors: (1) that the state court action encompassed the entire controversy, and the federal action involved only some of the parties and some of the claims; and (2) that the federal action would improperly interfere with the state action.  Id. at 1331.  We explained that "[o]ur list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in Brillhart and Wilton."  Id.

In light of this case law, Great Lakes has not persuaded us that the district court abused its discretion in declining jurisdiction here.  As an initial matter, we recognize that the district court did not expressly cite to the Ameritas case, or its nine-factor test.  Yet a review of the record reveals that Great Lakes itself did not cite the case, or its test, to the district court.  Cf. Stewart v. Dep't of Health & Human Servs., 26 F.3d 115, 115 (11th Cir. 1994) ("this court will not address an argument that has not been raised in the district court").  Nevertheless, the district court's decision did address prongs of the Ameritas test, including whether the federal case would serve a "useful purpose," whether there was a better alternative remedy, and whether factual issues were important to the resolution of the federal case.  To the extent the district court did not consider all of the factors, or

5

considered other factors, we have already held that the list of factors is not exclusive, and that no "one factor is controlling." Ameritas, 411 F.3d at 1331.

Moreover, we simply reject Great Lakes's assertion that the district court failed to give sufficient weight to the fact that "uniquely federal" issues of admiralty law are central to its federal case. As the district court noted, Florida courts are regularly required to apply principles of federal maritime law, see Carnival Corp. v. Carlisle, 953 So.2d 461, 464 (Fla. 2007) ("Both federal and state courts must apply federal maritime law . . . .") -- an observation that is well supported by case and statutory law. Since the original Judiciary Act of 1789 and enshrined in the statute that, today, confers jurisdiction on district courts to hear maritime disputes in the first instance, the law has codified the common law right to seek a jury trial in state court on admiralty issues in the "saving to suitors" clause. See 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.") (emphasis added). As the Supreme Court has held, "the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 445 (2001); see also id. at 455 ("[T]o define admiralty

6

jurisdiction as federal question jurisdiction would be a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce.") (quotations omitted). But in any event, even if admiralty law were a "uniquely federal" question, we have upheld a district court's decision to stay a case where the federal case involved just such a question -- the constitutionality of Alabama's Wrongful Death Statute. Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258 (11th Cir. 1997). Thus, that Great Lakes's federal case involves admiralty law does not control the district court's decision whether to stay the case.

We likewise find no merit to Great Lakes's contention that the district court improperly considered Great Lakes's failure to oppose the Insureds' motion to remand the state court case. Indeed, that Great Lakes did not oppose the motion is telling, since it suggests that Great Lakes is attempting to obtain a federal hearing in a case that is otherwise not removable. See Lewis, 531 U.S. at 455 ("We have previously refused to hold that admiralty claims . . . fall within the scope of federal question jurisdiction out of concern that saving to suitors actions in state court would be removed to federal court and undermine the claimant's choice of forum."). Great Lakes's conduct therefore goes directly to one of the Ameritas

factors -- the existence of "procedural fencing" -- and was not improperly considered by the district court.

Finally, other Ameritas factors further support the district court's granting of the stay. As the district court recognized, there is no indication that the federal case would serve a "useful purpose," and it is clear that factual issues, including whether the Insureds made material omissions in their application, and whether the type of damage the Insureds' vessel sustained would be covered by the policy, would be important to the resolution of the federal case. In addition, because a jury trial would not be available in federal court -- where "[maritime claims are] exercised according to the historic procedure in admiralty, by a judge without a jury," Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 363 (1959), superseded by statute on other grounds, 45 U.S.C. § 59 -- the state court proceeding actually may provide an alternative remedy that is more effective than the federal action, since it allows for a jury trial on the many fact-intensive questions that are central to this case.

Under the broad discretion outlined in Ameritas, as well as the facts and circumstances of this case, we cannot say that the district court has made a clear error of judgment, or has applied the wrong legal standard. Ameritas, 411 F.3d at

1332. We therefore affirm the district court's order staying the case, pending resolution of the state court action.

**AFFIRMED.**